Good morning, Your Honors, and may it please the Court. It would not have been obvious to simply substitute Young's delay elements in place of Nienaber's delay elements, exactly as Xilinx proposed, because that would render Nienaber unsatisfactory for its intended purpose, which is vertically centering an analog television picture, as reflected in Nienaber's title and throughout the document. You're saying this even if we agree with the claim construction below? Yes. The issue of combining Nienaber and Young is independent of the claim construction issues in this appeal. Now the Board tried to avoid this conclusion in three ways, but all three are flawed. First, the Board characterized PLL's arguments in this regard as based upon bodily incorporation of Young's delay elements into Nienaber's circuit. However, that is exactly what Xilinx proposed. In their words, they said, quote, simple substitution, and that is all they proposed. That is what we had a trial about. We didn't have a trial about any other type of combination of Nienaber and Young. Second, Xilinx argues that there are other undesirable side effects that Nienaber aims to solve, and that substituting Young's delay elements would not make Nienaber unsatisfactory for those other aims. However, the substitution would frustrate centering of a television picture, and that by itself is enough to have deterred one with ordinary skill in the art from making the substitution. I just want to make sure on one thing, Mr. Phelps, when you say what they were urging was substitution of an element for Young into an element of Nienaber, I guess it is, it's switching it with 16 and 12 in Nienaber, is that correct? That is correct, your honor. I just want to make sure I understood. Yes, element 27, the delay element in Young, was proposed as being the replacement for delay elements 12 and 26 in Nienaber. Oh, I see. Was it 12 and 26 or 12 and 16? 12 and 26, your honor. 12 and 26, okay. All right. Third, the board said that those skilled in the art would have made other modifications. In fact, they said, quote, any modification necessary to make the substitution acceptable. However, that is not what Xilinx proposed. We have no idea what those other modifications would have been or why they would have been obvious. We did not have a trial about that. Now, on a related note, the board tried to justify its obviousness conclusion in two ways. First, by referring to programmable delays in the admitted prior art of the 122 patent and also citing an analog to digital modernization rationale. Again, however, those were theories that were not advanced by Xilinx. Not in their petition. Where do we see the admitted prior art in the 122 patent? Exactly. I think I know, but I want to make sure I understand. In figure one, figure one is labeled as conventional. And then in figure two, there is a dashed line around certain portions of that circuit, which is also labeled as conventional. I see. Okay. And those are not, what's shown as conventional in figures one and two are not exactly the same. We never got to this issue, but there is, there would be some dispute about exactly what the admitted prior art is in the 122 patent. There's some ambiguity there. As I was saying, digital to analog modernization rationale, I'm sorry, the analog to digital modernization rationale and the reliance on the admitted prior art in the 122 patent were not obviousness theories that Xilinx advanced in this case. They did refer to the admitted prior art briefly in the background portion of their petition, but they never relied on the admitted prior art in any sense in their combination of references for their obviousness contentions. So it was improper for the board to have taken these arguments and to base its decision on those theories. That's contrary to what this court has said is in intelligent biosystems and magnum oil tools, for example. I'd like to turn next to the issue of clock. The definition of one of ordinary skill in the art in this case comes right out of the mouth of Xilinx expert. And what he said is telling. And he said this before he realized that there was a problem with his definition of clock. He said a person of ordinary skill in the art, this art in this case, would have, quote, at least one year of experience relating to clock generation and synchronization in digital systems. And that's on appendix page 613. That defines the perspective from which the meaning of the term clock must be interpreted. That also defines a key element of the term clock, that it is used in a digital system. Indeed, Professor Hayes, PLL's expert, explained that clocks are universally employed in all synchronous digital systems, that clocks are the heartbeat of such systems, that the term clock has acquired an established meaning to those skilled in the art. And when those skilled in the art refer to a clock, they have a definite understanding of what the term means. And that was undisputed. Dr. Alpert, the expert for the petitioner Xilinx, testified that he could not think of a synchronous digital circuit that did not have a clock. Yet the board stretched the meaning of the word clock to encompass clocks beyond the so-called clocks in the analog context. And that was there. Phil, you're getting into this because your point would be if you don't have a clock in Nineaber, it's not eligible for combination with YUM. Well, it's eligible, but the combination would not have a clock and thus would not reach the claims. And that's exactly right. The only evidence that Xilinx put forward regarding clock is a few documents that use the term analog clock or refer to a signal in an analog system as a clock. But this is the critical part. There was never any proof put on by Xilinx that that is an accepted or even acceptable usage of the term. There are over nine million patents, hundreds of thousands of IEEE articles, and they found a handful that used the term clock in an analog context. They did not take the critical next step to show that that is an accepted or acceptable usage of the term in contrast to its universally recognized meaning in the digital context. And Nineaber does not disclose a clock under the correct interpretation. Nineaber's vertical sync signal is used to drive an analog CRT cathode ray tube in an analog television. And perhaps the board incorrectly interpreted clock because it did not follow a process respecting PLL's due process rights. I'd like to address that. The board did not allow PLL to file a surreply on the issue of clock. Now, in a regular case, if Xilinx had put its position and argument and evidence regarding clock in its petition, then we would have had an opportunity to respond in our response. That didn't happen. There was nothing in their petition. There was just a statement by their expert, not their petition, but in the expert declaration, that said Nineaber's sync signal is a clock because it's a periodic timing control signal. So we came back in our response and proposed our own definition with supporting evidence, and then the reply came in from Xilinx with copious new evidence and arguments, more exhibits with their reply than with their petition on this very point, and we were not afforded an opportunity to respond to that. And that's a due process violation under the Administrative Procedures Act. And, incredibly, Xilinx makes an argument that we waived this argument by not requesting a surreply below. We certainly did. Mr. Cochran, at least, was present when I made the request in a telephone conference call. He opposed it, and the board agreed with him. The waiver argument has absolutely no merit whatsoever. Is the waiver argument made also with respect to the issue about combining the two references? Or is it not present there? I don't believe the waiver argument extends to that issue. With respect to the first point you were addressing in your argument? The waiver argument Xilinx is making, as I understand it, is only that we waived the argument regarding the surreply. Does that answer your question? How does that relate to the final decision, obviously, of the board? Well, of course, the board's final decision interprets clock based upon an incomplete record. Right. Because it didn't receive our surreply. Now, we did have an opportunity to respond in other ways. I responded as best I could at oral argument.  We did also file observations on the cross-examination of Dr. Alpert, cross-examining him on his reply declaration. We filed those observations, but the board completely ignored them. They're not even acknowledged in the final written decision. Everything we could have done, that we tried to do, was inadequate. This is a case that really screams out for a surreply, if there ever was one. Finally, well, I want to quickly address the point of programmable and then reserve my time for rebuttal. The issue comes down to this, whether a programmable device must have memory. And the answer is yes. Now, the board agreed that programmable is not the same as configurable or adjustable, but yet it conflated those terms when it said you can have programming without memory to store the programming. And the board was led primarily astray in one respect. They misunderstood the 1-2-2's patents, reference to metal fuses, I'm sorry, metal masks and fuses. They believed that these were ways in which programming could be done without memory. The fact is that metal masks and fuses are ways to set the contents of memory. And that's what our expert explained, Dr. Hayes. That's what the patent says. It was simply a complete misunderstanding of that fact by the board. Unless there are further questions, I reserve the balance of my time. Thank you. May it please the court. Matthew Silvera for Xilinx. This appeal presents three substantive issues. The first two involve factual findings underlying claim construction. And the third involves the factual finding of a motivation to combine. All three of those issues are reviewed for substantial evidence, which means even if there's room for disagreement, as long as the board's findings are reasonable and supported by the record, they must be affirmed. They are. Then we have the procedural objections that are being raised. But both the board and Xilinx acted squarely within the statutes and the regulations that govern inter-parties review of proceedings. So once again, there is no procedural violation here. And therefore, this court should affirm. Now, I'm actually going to zoom out a little bit and talk about the obviousness, the motivation to combine first, which is what I described as the third substantive issue. And I think we have to realize how this patent even got on the books, which is there was an application for this very incredibly broad phase-locked loop circuit in which there was claimed essentially an oscillator, a reference path, a feedback path, and a programmable delay circuit on one of the paths alone. And that was rejected over the Young reference, which is one of the two references we're relying on here as prior art. And the board said, no, you actually have an anticipation issue here. That's already been disclosed by Young. And so to get around that rejection by the examiner, PLL said, OK, let's put another programmable delay circuit onto the reference path. So that's all they did is they added a programmable delay circuit, which was already known in the art, which is already conventional. That's shown from figure two of the 1-2-2 patent in which a programmable delay circuit is part of the conventional art already. That was already known. They just added it to the other path. So what we brought to the board's attention was another phase-locked loop circuit reference in which there was a delay on both the reference path and on the feedback path. Now, what we're dealing with here is the art of phase-locked loop circuits. These are common in both analog and digital applications. And we simply made clear that we already know that programmable delay circuits are conventional in the art. And so all that happened here is that we had it added to the other path, but that's already been disclosed in the art, in the Nienaber reference. So that's a perfectly appropriate obvious misanalysis. So let me ask, because I understand it. I'm trying to understand the argument here that's being made. The evidence in the petition was that you could substitute 27 in Young, the position, substitute 27 in Young for 26 and 12 in Nienaber. Am I saying it right, Nienaber? Yeah, in Nienaber. Okay, that's what the argument is. And as I understand, Mr. Phillips' contention is that you never argued, that it was never argued that a skilled artisan would have needed to modify Young's programmable delay to work within Nienaber. And that the board kind of picked up on that and ruled on that basis, and that's something he didn't have a chance to address. Yeah, I don't think that's quite right. First of all, what the board said, among other things, because when the board walked through its motivation pine analysis, it first said, even if you didn't modify the programmable delay circuit from Young, and you did just bodily incorporate it into Nienaber, it would still be operative for its intended use. Well, it wouldn't look that good. What's that? You couldn't get the total vertical problem solved, could you? The argument is made that it wouldn't be an acceptable solution, because isn't in somebody's brief, there's a picture of that man, half his face is on one image and half is on the other? Yes, I believe that was from a blog post, if I'm not mistaken. But it's illustrating this point, that person that looks unhappy in that picture, I guess they're illustrating the point that if you just did that, what you just described, here's what you'd end up with. Right. That's not a really acceptable solution. Right. Well, Nienaber wasn't solely focused on the centering. Nienaber talks about moving the image up and down on the screen and avoiding consequences, and it talks about things like picture linearity, which is not alignment. Whose picture is that again? It's from a blog post. I don't know the individual whose blog it is. I wondered if it was anyone in the case. It looks like something out of a science fiction movie. Yes. I'm sorry, go ahead. It's what it is. So if you look at Nienaber's purpose, it's not a matter of only for the centering. It's about moving the picture up and down, and with Young's exact circuit, it would do that. But you don't need Young's exact circuit anyway. That's just not the proper obviousness test. You look at what the teachings in the prior art would suggest to the ordinary skilled artisan. And the teachings would suggest that, okay, you could either have a couple of delays, you move it to a certain degree, not delays, a couple of options for the delay, or you could have more. And first, if you go past the fact that the board concluded that this would not be inoperative for the intended purpose of Nienaber based on bodily incorporation, but if you go past that, you have to look at the fact that this would still be an obvious combination because it suggests that you could modify. That's clear. And this is where we have to go back to how this even came to be a patent, which is this programmable delay circuit, that was already conventional. It's known. And so to the extent that the board went ahead and said, all right, we have these other prior art references that were prior art for this exact patent. It said, we already know what programmable delay circuits are. So there's absolutely nothing wrong with that analysis at all. That's just a proper obviousness analysis. And I think you have to go to KSR even, which talks about this being a flexible analysis. And instead, we're looking to really, and I think what PLL is looking to do, is really place these sort of boundaries around obviousness that haven't been appropriate since KSR. And one, I think, good line from KSR, quite frankly, on that point, is familiar items may have obvious uses beyond their primary purposes. And what we have PLL arguing here is, well, the primary purpose of Nienaber would be this vertically centering. And so if it wouldn't be good enough for that, if the Young delay, just that one bodily incorporated Young delay, wouldn't be good enough for that, then we don't have obviousness. That's not the test. That's not the way the law is under KSR or any of this court's subsequent preferences. I think the Inri Aikon case, from your honor, does a great job of explaining how this inoperable combination argument is supposed to work. And when you do that, you look at the fact that, would it not have worked for the application that the claimant is seeking to create? And here, even if you did this, it would clearly work for the operation that is claimed in the 1-2-2 patent. Because the 1-2-2 patent, once again, is incredibly broad. All it claims is a programmable delay circuit. And in the specification, it refers to that programmable delay circuit even being one-time programmable. So two would be enough for the application that was being created here. So, moving then back to clock, what's interesting here is there's really no dispute about the base definition of clock. Everyone agrees it's a periodic signal for timing control or synchronization. And that was disclosed in our petition. That's what Dr. Alpert said. The only thing that happened on the patent owner's response was there was an attempt by PLL to artificially narrow that construction and add on just to append in a digital system. Frankly, we would have had no way of knowing that that was going to be the argument PLL would make. Because the concept of a clock being analog or digital I think is pretty well known to most people. So we had no reason to anticipate that argument. It's pretty clear, frankly, even from the extrinsic evidence that they relied on. Because the intrinsic evidence is clear. Digital is never used anywhere in the patent, either in the claims or in the specification. And so PLL had to go ahead and dig up some extrinsic evidence to try to support their theory. But if you look at the IEEE dictionary, it does not use the word digital either. So then PLL has to go a step further and they say, well, look at the C code. That's the category code for computer. Well, computers are digital. But lo and behold, the C category code in the IEEE dictionary also includes analog computers and hybrid circuits and other things that reflect that you can have either analog or digital. So the claim construction issue, to the extent you even get to the extrinsic evidence, is certainly supported by substantial evidence. On the programmable delay circuit, then we get into this notion of, OK, even though the 122 patent specification clearly discloses that we could have a one-time programmable circuit, still there would be a memory required. Once again, to the extent the specification refers to memory, because the claims say nothing of memory, but to the extent that the specification refers to memory, it says you may have memory, you can have memory, or you can have fuses or metal masks. And fuses or metal masks do not require memory. And Dr. Hayes even admitted that memory was not necessary for fuses. But once again, I think you can make that statement on the intrinsic evidence alone. And to the extent you go to the extrinsic evidence, it's certainly supported by substantial evidence here. So then what we're left with is this procedural argument. On the waiver point, I don't know what the right word for it is, but what's clear is that there was no record of this request for a SIR reply that was with the certified list of records that was sent for purposes of this appeal. We pointed that out and then made the point that because there's no record, there's no way to actually ascertain whether the board abused its discretion. The Belden case makes this perfectly clear. It says, absent a board denial of a concrete and focused request for a SIR reply, there's no basis to provide to find a procedural violation. Of course, here we can't have any way of looking to see whether there was a concrete or focused request, because there's just no record of it at this point. In any event, what Xilinx put in in its reply was completely responsive to the patent owner's response. To Judge Hull's question about whether this went beyond the clock, did this go to obviousness, the only evidence that they are angry about, that they're upset about, involves clock. But as I've already explained, you could find clock is not limited to a digital system based on the intrinsic evidence alone. You could find that based on the intrinsic evidence and the expert testimony that was originally put in, or you could find that on the extrinsic evidence, the expert testimony, and the IEEE dictionary, which was PLL's own evidence. You've got no error there in any event, even if you were to assume that they made the showing that they say they made. As to this notion of an opportunity to respond, they plainly had an opportunity to respond. They did cross-examine Dr. Albert, and they did provide extensive observations on Dr. Albert's testimony, and then they argued every single point that they're now arguing in the briefs, they argued that before the board. The only case in which this court has found that there was a procedural violation because of a failure to grant a SIR reply was the Nuvasiv case. In the Nuvasiv case, what's clear about the absence of opportunity there is one, you had a reply that was not wholly responsive to the patent owner's response. It actually relied on a figure from one of the prior references that had never previously disclosed it would be relying on. Two, in the observations on the cross-examination that were submitted, the board actually struck various parts of those and said we're not going to consider those. Then at the oral hearing, the board went ahead and it actually said no, we're not going to hear argument on these various topics that you want to bring up. So there you really did have a due process violation because the patent owner was prevented from making various arguments that it wanted to make. Here we don't have that. We don't have any showing that they were prevented from making any argument that they wanted to make at the oral hearing or that they could not have done so through their cross-examination or through their observations on the cross-examination. In fact, we've never had any proffer as to any sort of evidence that they would have wanted to put on. Frankly, that's another reason why Xilinx does submit that the supplemental appendix, these sort of emails that don't reflect any sort of proffer, should really not be part of the record either. In short, we're dealing with three substantive issues, all dealing with substantial evidence review. They should be affirmed and the court should also affirm that there was no procedural violation. Unless the court has any further questions, I'll leave it at two. Mr. Silveria began his argument by recasting the obviousness case in terms of the admitted prior art. I want to remind your honors that that is not what the petition set forth. The petition set forth an obviousness case based upon Nienaber and Young and in particular a simple substitution with no reliance whatsoever on the admitted prior art in the patent. Xilinx was the master of its petition. It could have, if it so chose, presented an obviousness challenge that relied upon the admitted prior art. For strategic reasons known only to it, it chose not to do so. We did not have a trial about any obviousness case involving the admitted prior art. Secondly, I want to talk about obviousness and the notion that KSR allows us to inject flexibility into the analysis. That is absolutely true. However, in this type of proceeding, the point at which that flexibility should be injected is in the petition. In how the obviousness case is formulated. It is a procedural due process violation for the board to inject that flexibility sua sponte in ways that the petition did not propose midway through the trial. That is what happened here. Xilinx notes that the intrinsic evidence, the patent, the 1-2-2 patent never says the word digital. That's right, but it doesn't have to because the term clock carries that weight to those skilled in the art. Those skilled in the art know that it has a universal meaning as a signal that pulses or the heartbeat of a digital system. Xilinx also referred to the C category of the IEEE dictionary as having other subject matters included some terms from other subject matters such as analog computers and general circuitry. However, there is no evidence put forward by Xilinx in this case that the term clock belongs in any of those other categories. It clearly belongs in the digital category and no other. In fact, there were observations on that very point where we got Dr. Albert to agree but again, the board did not consider those observations. And finally, on the waiver point, I would say that we never argued that the reply filed by Xilinx was improper. We never tried to strike the reply. We simply wanted an opportunity to respond in writing and we were not granted that request. So we did the best that we could based upon the options that were available to us namely responding in oral argument and filing our observations but we were handicapped by doing so. We should have been able to file a certain reply so that the judges on the panel could consider that in writing when they had an open mind, not just oral argument when it was really too late. Thank you very much. Thank you. We thank both sides. The case is submitted and that concludes our proceedings for this morning. All rise. The honorable court adjourned until tomorrow morning at 10 a.m.